**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

—————————————————————

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No._____** |
| ) | |
| **v.** ) | |
| ) | **Judge _____** |
| **DELEK REFINING, LTD.** ) | |
| ) | |
| **Defendant.** ) | |
| ————————————————————— ) | |

## <u>COMPLAINT</u>

Plaintiff, the United States of America ("United States"), by the authority of the Attorney

General of the United States and through the undersigned attorneys, acting at the request of the

Administrator of the United States Environmental Protection Agency ("EPA"), files this

Complaint and alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      This is a civil action brought pursuant to Section 113(b)(2) of the Clean Air Act

("CAA"), 42 U.S.C. § 7413(b)(2), against Delek Refining, Ltd. ("Delek") for violations of

Sections 112(r)(1) and 112(r)(7)(E) of the CAA, 42 U.S.C. §§ 7412(r)(1) and 7412(r)(7)(E), and

the Chemical Accident Prevention Provisions promulgated at 40 C.F.R. Part 68 (the "Risk

Management Program" regulations) at its petroleum refinery located at 1702 East Commerce

Street in Tyler, Texas ("Refinery").

2.      Delek's violations of the CAA Section 112(r), 42 U.S.C. § 7412(r), and the Risk

Management Program regulations relate to acts and omissions leading up to and following a pipe

rupture and fire that occurred at the Refinery on November 20, 2008.  The pipe rupture and fire

occurred at the Saturated Gas Unit when a corroded pipe carrying naphtha (a flammable mixture of hydrocarbons) ruptured and the naphtha ignited.  Two employees were killed as a result of the explosion and fire and several others were injured.  During the fire, naphtha and its constituents, including but not limited to butane, carbon monoxide, ethane, ethylene, hydrogen, isobutane, isopentane, methane, pentane, propane, and toluene were released into the atmosphere.

3.      Pursuant to Section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), the United States seeks the assessment of civil penalties and injunctive relief based on Delek's violations of Section 112(r) of the Act and the Risk Management Program regulations.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 7413(b) and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.      Venue is proper in this district pursuant to 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1395 because Defendant Delek resides and is doing business within this judicial district at its refinery in Tyler, Smith County, Texas, because the actions giving rise to the violations alleged in this Complaint occurred in this judicial district, and because Delek may otherwise be found in this judicial district.

6.      Notice of the commencement of this action has been given to the State of Texas pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## PARTIES

7.      Plaintiff is the United States of America, acting at the request of the United States Environmental Protection Agency.

8.      Defendant is Delek Refining, Ltd., a limited liability company organized under the laws of the State of Texas that is doing business in this judicial district at its refinery in Tyler,

Texas.  Delek Refining, Ltd. is a subsidiary of Delek US Holdings, Inc., which is a Delaware

corporation based in Brentwood, Tennessee.  Delek US Holdings, Inc. is majority-owned by

Delek Group, a diversified energy, infrastructure, automotive, and financial services company.

## STATUTORY AND REGULATORY FRAMEWORK

9.     The primary purpose of the Clean Air Act is to "protect and enhance the quality

of the Nation's air resources so as to promote the public health and welfare and the productive

capacity of the population."  42 U.S.C. § 7401(b)(1).

10.     The purpose of CAA Section 112(r) is to provide requirements and standards to

help prevent and minimize accidental releases of air pollutants:  "It shall be the objective of the

regulations and programs authorized under this subsection to prevent the accidental release and

to minimize the consequences of any such release of any substance listed pursuant to paragraph

(3) or any other extremely hazardous substance."  42 U.S.C. § 7412(r)(1).

**A.     CAA Section 112(r)(1) – the "General Duty Clause"**

11.     CAA Section 112(r)(1), 42 U.S.C. § 7412(r)(1), provides in pertinent part:

> The owners and operators of stationary sources producing,
> processing, handling or storing [any substance listed pursuant to
> Section 112(r)(3) of the CAA or any other extremely hazardous
> substance] have a general duty . . . to identify hazards which may
> result from such releases using appropriate hazard assessment
> techniques, to design and maintain a safe facility taking such steps
> as are necessary to prevent releases, and to minimize the
> consequences of accidental releases which do occur.

**B.     CAA Section 112(r)(7) -- Risk Management Program Regulations**

12.     CAA Section 112(r)(7), 42 U.S.C. § 7412(r)(7), provides in pertinent

part:

> (A)     In order to prevent accidental releases of regulated
> substances, the Administrator is authorized to promulgate release

3

prevention, detection, and correction requirements which may include monitoring, record-keeping, reporting, training, vapor recovery, secondary containment, and other design, equipment, work practice, and operational requirements.

. . .

(B) (ii) The regulations under this subparagraph shall require the owner or operator of stationary sources at which a regulated substance is present in more than a threshold quantity to prepare and implement a risk management plan to detect and prevent or minimize accidental releases of such substances from the stationary source, and to provide a prompt emergency response to any such releases in order to protect human health and the environment. Such plan shall provide for compliance with the requirements of this subsection.

. . .

(B) (iii)  The owner or operator of each stationary source covered by clause (ii) shall register a risk management plan prepared under this subparagraph with the Administrator before the effective date of regulations under clause (i) in such form and manner as the Administrator shall, by rule, require.

13.    In 1994, EPA promulgated the Risk Management Program regulations in accordance with CAA Section 112(r)(7), 42 U.S.C. § 7412(r)(7).  *See* 40 C.F.R. Part 68, Chemical Accident Prevention Provisions.

14.    A "regulated substance" includes any substance listed by EPA pursuant to CAA Section 112(r)(3).  42 U.S.C. § 7412(r)(2)(B).  Lists of regulated substances and threshold quantities are provided in tables located at 40 C.F.R. § 68.130.

15.    Pursuant to 40 C.F.R. § 68.10, the owner or operator of a stationary source that has more than a threshold quantity of a regulated substance in a process must comply with the Risk Management Program regulations.

16.     A "process" is defined broadly to mean "any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or combination of these activities" and includes "any group of vessels that are interconnected, or separate vessels that are located such that a regulated substance could be involved in a potential release, shall be considered a single process."  40 C.F.R. § 68.3.

17.     A "Program 3" process is subject to the most stringent risk management requirements under the Risk Management Program regulations.  Pursuant to 40 C.F.R. § 68.12, the owner or operator of a stationary source with a process subject to the Program 3 requirements must, among other things, comply with the prevention requirements of 40 C.F.R. §§ 68.65 – 68.87.

**C.     Enforcement of the Clean Air Act**

18.     Pursuant to CAA Section 112(r)(7)(E), it is unlawful for any person to operate any stationary source subject to the Risk Management Program requirements and regulations in violation of such requirements and regulations.

19.     CAA Section 113(b) provides that whenever a person violates any requirement or prohibition of Subchapter I of the CAA (42 U.S.C. §§ 7401-7515), the Administrator of EPA "shall, as appropriate, in the case of any person that is the owner or operator of . . . a major stationary source . . . commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty" of not more than [$32,500 or $37,500] per day for each violation, or both . . . ."  42 U.S.C. § 7413(b).  The statutory penalty amount was increased by the Civil Monetary Penalty Inflation Adjustment Rule to $32,500 per day per violation occurring between March 16, 2004 and January 12, 2009 and to $37,500 for violations continuing or occurring after January 12, 2009 and through December 6, 2013.  *See* 40 C.F.R. § 19.4.

## FACTUAL ALLEGATIONS

20.     At all relevant times, Delek has been the "owner and operator" of the Refinery as defined in CAA Section 112(a)(9), 42 U.S.C. § 7412(a)(9), and within the meaning of CAA Section 112(r) and the Risk Management Program regulations.  Delek acquired ownership and began operating the Refinery on April 29, 2005.

21.     At all relevant times, the Refinery has been a "stationary source" as defined in CAA Section 112(r)(2)(C), 42 U.S.C. § 7412(r)(2)(C).

22.     At all relevant times, Delek has been a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and within the meaning of Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

23.     At all relevant times, the Refinery produced, processed, handled, and stored flammable and toxic "regulated substances," as defined in CAA Section 112(r)(2)(B), 42 U.S.C. § 7412(r)(2)(B), and as also listed in 40 C.F.R. § 68.130, including, but not limited to, butane, ethane, ethylene, hydrogen, isobutane, isopentane, methane, pentane, propane, and toluene.

24.     At all relevant times, the maximum quantity of toluene in process at the Saturated Gas Unit exceeded the threshold quantity specified in 40 C.F.R. § 68.130.

25.     At all relevant times, based on its constituents and the manner in which it was produced, processed, handled, and stored at the Refinery, naphtha and its constituents, including but not limited to butane, ethane, ethylene, hydrogen, isobutane, isopentane, methane, pentane, propane, and toluene, are "extremely hazardous substances" within the meaning of CAA Section 112(r)(1), 42 U.S.C. § 7412(r)(1).

26.     At all relevant times, the Saturated Gas and Alkylation Units at the Refinery contained extremely hazardous substances and toxic or flammable regulated substances,

6

including, but not limited to, naphtha, butane, ethane, ethylene, hydrogen, isobutane, isopentane, methane, pentane, propane, and toluene.

27.     At all relevant times, Delek was subject to the "General Duty Clause" of CAA Section 112(r)(1), 42 U.S.C. 7412(r)(1), regarding the prevention of "accidental releases" at the Refinery, as defined in CAA Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and 40 C.F.R. § 68.3.

28.     At all relevant times, the Saturated Gas Unit has been located such that releases from it could affect the Alkylation Unit, the FCC Unit, and the Naphtha Hydrotreater Unit.

29.     At all relevant times, the Refinery and the covered processes listed above were subject to the requirements of the "Program 3" Risk Management Program regulations pursuant to 40 C.F.R. § 68.10(d).

30.     At all relevant times, the Saturated Gas Unit, Alkylation Unit, FCC Unit, and Naphtha Hydrotreater Unit at the Refinery were "petroleum refining process units" and "covered processes" as defined at 40 C.F.R. § 68.3 and within the meaning of 40 C.F.R. § 68.10(d).

### The November 20, 2008 Explosion and Fire

31.     On November 20, 2008, a four-inch diameter pipe in the Saturated Gas Unit at the Refinery ruptured and released hazardous air pollutants into the ambient air.  The pressurized pipe was transporting high-temperature naphtha.  The naphtha vapors reached a nearby ignition source and exploded, which set off a major fire at the Refinery.

32.     Two employees were killed as a result of the explosion and fire and several others were injured.

33.     During the fire, naphtha and its constituents, including but not limited to naphtha, butane, carbon monoxide, ethane, ethylene, hydrogen, isobutane, isopentane, methane, pentane, propane, and toluene were released into the air.

34.     As a result of the pipe rupture and fire, air pollutants were released from areas of the Refinery.

35.     The piping failure was caused by a combination of untreated corrosion and erosion on the pipe that, over time, reduced the pipe-wall thickness to the point where it ruptured at the normal operating temperature and pressure of the system.

36.     Explosions and fires related to ruptures of pressurized gas lines are recognized hazards in the refining industry.

37.     As a result of the November 20, 2008 pipe rupture and fire at the Refinery, Delek released listed regulated substances and extremely hazardous substances into the air, including, but not limited to, naphtha, butane, carbon monoxide, ethane, ethylene, hydrogen, isobutane, isopentane, methane, pentane, propane, and toluene.

38.     The release of these listed regulated substances and extremely hazardous substances constituted an "accidental release" into the ambient air within the meaning of CAA Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and the Risk Management Program regulations.

39.     The pipe rupture and resulting explosion, fire, and harm were preventable.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (Clean Air Act General Duty Clause)
### (42 U.S.C. § 7412(r)(1))

40.     All paragraphs of the Complaint are incorporated herein by reference.

41.     Prior to the November 20, 2008 pipe rupture and explosion, Delek operated the refinery in violation of its general duty under Section 112(r)(1) of the Clean Air Act, 42 U.S.C. § 7412(r)(1).

42.     Delek failed to identify hazards that may result from accidental releases using appropriate hazard assessment techniques prior to the November 20, 2008 incident.  Delek failed to prepare an accurate hazard assessment that included the hazards associated with extremely hazardous and regulated substances present at the Refinery, including naphtha and its constituents in the Saturated Gas Unit, and hazards associated with the siting of processes.

43.     Delek failed to design and maintain the Saturated Gas Unit at the Refinery prior to the November 20, 2008 incident in a manner that would prevent releases of regulated substances and extremely hazardous substances so as to be safe and free of recognized hazards and failed to take steps as were needed to prevent such releases.

44.     Hazards included, but were not limited to, the risk that failing to maintain mechanical integrity of pipes and processes, including timely inspections, maintenance, and replacement of equipment, would or was likely to result in an accidental release of regulated substances and extremely hazardous substances at the Saturated Gas Unit; and the risk that failing to provide blast-resistant buildings within the process areas would or was likely to endanger worker safety in the event of equipment failure and an accidental release.

45.     These hazards are recognized within the petroleum refining industry.

46.     Delek failed to conduct proper thickness measurement location inspections of pipes and other process equipment in and around the Saturated Gas Unit prior to the November 20, 2008 incident.  Delek failed to remediate adverse conditions found in prior inspections. Delek failed to repair corroded piping detected near the site of the pipe rupture.

47.     Delek delayed acting on recommendations to improve the design and safety of the refinery prior to the November 20, 2008 incident, including siting of processes within the process areas and installation of blast-resistant buildings within the process areas.

48.     Feasible means existed by which Delek could have eliminated or reduced these hazards.

49.     As a result of its failure to design and maintain a safe facility, failure to identify hazards that may result from accidental releases, and failure to minimize the consequences of accidental releases, Delek violated the General Duty Clause of CAA Section 112(r)(1), 42 U.S.C. § 7412(r)(1), prior to the November 20, 2008 incident.

50.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Delek is liable for injunctive relief and the assessment of a civil penalty for each day of violation.

## SECOND CLAIM FOR RELIEF
### (Program 3 Prevention Program – Process Safety Information)
### (40 C.F.R. § 68.65)

51.     All paragraphs of the Complaint are incorporated herein by reference.

52.     Pursuant to 40 C.F.R. § 68.65(a), (c)-(d), Delek was required to "complete a compilation of written process safety information before conducting any process hazard analysis," including information pertaining to the technology and equipment involved in the process.

53.     Contrary to the regulations, Delek failed to prepare the required information on process safety prior to the November 2008 incident, including information regarding the siting of control rooms, which were situated adjacent to and under process equipment.

54.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.65(a), (c)-(d) and CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

55.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for injunctive relief and the assessment of a civil penalty for each day of each violation.

### THIRD CLAIM FOR RELIEF
**(Program 3 Prevention Program – Process Hazard Analysis)**
**(40 C.F.R. § 68.67)**

56.     All paragraphs of the Complaint are incorporated herein by reference.

57.     Pursuant to 40 C.F.R. § 68.67(e), Delek was required to establish a system to promptly address findings of its process hazard analysis team and to resolve recommendations in a timely manner prior to the November 20, 2008 incident.

58.     Pursuant to 40 C.F.R. § 68.67(f), Delek was required to update and revalidate its Process Hazardous Analysis at least every five years.

59.     Contrary to the regulations, Delek and its predecessor delayed follow-up on needed process hazard analysis and Delek failed to revalidate its process hazard analysis within five years.  Delek failed to complete the required five-year review on the Saturated Gas Unit and the Alkylation Unit (Program 3 processes) prior to the November 20, 2008 incident.

60.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.67(e)-(f) and CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

61.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for injunctive relief and the assessment of a civil penalty for each day of each violation.

### FOURTH CLAIM FOR RELIEF
**(Program 3 Prevention Program – Operating Procedures)**
**(40 C.F.R. § 68.69(c))**

62.     All paragraphs of the Complaint are incorporated herein by reference.

63.     Pursuant to 40 C.F.R. § 68.69(c), Delek was required to review its operating

procedures "as often as necessary to assure that they reflect current operating practice" and

"certify annually that these operating procedures are current and accurate."

64.     Contrary to the regulations, Delek did not review its operating procedures and

annually certify that these procedures reflected current practice and were accurate prior to or

after the November 20, 2008 incident.

65.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.69(c) and

CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

66.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for

injunctive relief and the assessment of a civil penalty for each day of each violation

**FIFTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Mechanical Integrity)**
**(40 C.F.R. § 68.73(b) – written procedures)**

67.     All paragraphs of the Complaint are incorporated herein by reference.

68.     Pursuant to 40 C.F.R. § 68.75(b), Delek was required to "establish and implement

written procedures to maintain the on-going integrity of process equipment."

69.     Contrary to the regulations, Delek failed to establish and implement written

mechanical integrity procedures for corrosion-under-insulation inspections prior to or after the

November 20, 2008 incident.

70.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.73(b) and

CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

71.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for

injunctive relief and the assessment of a civil penalty for each day of each violation.

## SIXTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Mechanical Integrity)
### (40 C.F.R. § 68.73(c) – training)

72.     All paragraphs of the Complaint are incorporated herein by reference.

73.     Pursuant to 40 C.F.R. § 68.73(c), Delek was required to "train each employee involved in maintaining the on-going integrity of process equipment in an overview of that process and its hazards and in the procedures applicable to the employee's job tasks to assure that the employee can perform the job tasks in a safe manner."

74.     Contrary to the regulations, Delek failed to train employees on mechanical integrity procedures for corrosion-under-insulation inspections prior to or after the November 20, 2008 incident.

75.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.73(c) and CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E)

76.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for injunctive relief and the assessment of a civil penalty for each day of each violation.

## SEVENTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Mechanical Integrity)
### (40 C.F.R. § 68.73(e) – corrective measures)

77.     All paragraphs of the Complaint are incorporated herein by reference.

78.     Pursuant to  40 C.F.R. § 68.73(e), Delek was required to "correct deficiencies in equipment that are outside acceptable limits before further use or in a safe and timely manner when necessary means are taken to assure safe operation."

79.     Contrary to the regulations, Delek did not timely correct deficiencies related to corrosion previously discovered in piping prior to the November 20, 2008 incident.

13

80.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.73(e) and

CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

81.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for

injunctive relief and the assessment of a civil penalty for each day of each violation.

### EIGHTH CLAIM FOR RELIEF
**(Program 3 Prevention Program – Compliance Audits)**
**(40 C.F.R. § 68.79(a) – certification)**

82.     All paragraphs of the Complaint are incorporated herein by reference.

83.     Pursuant to 40 C.F.R. § 68.79(a), Delek was required to certify that it had audited

its procedures and operations at least every three years to "to verify that procedures and practices

developed under this subpart are adequate and are being followed."

84.     Contrary to the regulations, Delek failed to provide the required certification for

more than three years prior to the November 20, 2008 incident.

85.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.79(a) and

CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

86.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for

injunctive relief and the assessment of a civil penalty for each day of each violation.

### NINTH CLAIM FOR RELIEF
**(Program 3 Prevention Program – Compliance Audits)**
**(40 C.F.R. § 68.79(c) – audit report)**

87.     All paragraphs of the Complaint are incorporated herein by reference.

88.     Pursuant to 40 C.F.R. § 68.79(c), Delek was required to prepare a report on the

findings of its audits under 40 C.F.R. § 68.79.

14

89.     Contrary to the regulations, Delek failed to prepare the required compliance audit reports for more than three years prior to the November 20, 2008 incident.

90.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.79(c) and CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

91.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for injunctive relief and the assessment of a civil penalty for each day of each violation.

**TENTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Compliance Audits)**
**(40 C.F.R. § 68.79(d) – corrective measures)**

92.     All paragraphs of the Complaint are incorporated herein by reference.

93.      Pursuant to 40 C.F.R. § 68.79(d), Delek was required to "promptly determine and document an appropriate response to each of the findings of the compliance audit, and document that deficiencies have been corrected."

94.     Contrary to the regulations, Delek failed to correct all deficiencies from its last compliance audit conducted prior to the November 20, 2008 incident.

95.     As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.79(d) and CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

96.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for injunctive relief and the assessment of a civil penalty for each day of each violation.

**ELEVENTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Incident Investigation)**
**(40 C.F.R. § 68.81)**

97.     All paragraphs of the Complaint are incorporated herein by reference.

15

98.     Pursuant to 40 C.F.R. § 68.81, Delek was required to immediately investigate the November 20, 2008 pipe rupture and explosion and prepare a report that, among other things, identifies the causes of the accident and provides recommendations for corrective measures.

99.     Contrary to the regulations, Delek failed to timely complete its investigation and reporting obligations.

100.    As a result of these acts or omissions, Delek violated 40 C.F.R. § 68.81 and CAA Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

101.    Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), Delek is liable for injunctive relief and the assessment of a civil penalty for each day of each violation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

a)      Enter judgment in favor of the United States and against Defendant Delek Refining, Ltd.;

b)      Order Delek Refining, Ltd. to take appropriate measures to mitigate the effects of its violations and prevent future violations;

c)      Assess civil penalties against Delek Refining, Ltd. in an amount of up to $32,500 per day for each such violation occurring between March 16, 2004 and January 12, 2009, and up to $37,500 per day for each such violation continuing or occurring after January 12, 2009.

e)      Award the United States its costs and expenses incurred in this action; and

f)      Grant the United States any further and other relief that this Court may deem appropriate.

16

Respectfully submitted,

FOR THE UNITED STATES:


SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice




JASON T. BARBEAU,
Senior Attorney, D.C. Bar No. 468200
Environmental Enforcement Section
Environmental and Natural Resources Division
United States Department of Justice
P. O. Box 7611 Ben Franklin Station
Washington, DC  20044
(202) 616-8908 (Telephone)
(202) 616-6584 (Facsimile)
jason.barbeau@usdoj.gov


JOHN M. BALES
United States Attorney
Eastern District of Texas



_____ /s/ Thomas E. Gibson _____
THOMAS E. GIBSON
Assistant United States Attorney
Senior Litigation Counsel
Lead Attorney
Texas State Bar No. 07875450
110 N. College, Suite 700
Tyler, TX  75702
(903) 590-1400
Fax: (903) 590-1436
Email: tom.gibson@usdoj.gov

Of Counsel:

Jacob Gallegos
Office of Regional Counsel, Region 6
U.S. Environmental Protection Agency
1445 Ross Avenue, Suite 1200
(6RC-EA)
Dallas, Texas 75202